Hecht *vs.* Colquhoun, *et al.*

(Decided 9th February, 1882.)

HENRY C. HECHT *vs.* ALICE E. COLQUHOUN, and others.

*Appeal from an Order overruling a Demurrer to a Bill— Remedy by Action of Ejectment, and Not by Bill in Chancery—1872, ch. 346.*

An appeal will lie from an order overruling a demurrer to a bill, where the demurrer goes to the entire bill.

It appearing from a bill, that the complainants are seeking through the medium of a suit in equity to recover property from parties, who not only deny their title, but who are in possession holding adversely, under no tenancy in common with the complainants, and whose adverse holding may, for aught that appears, have continued for such a period as to have clothed them with a title good even as against the undisputed owner of the paper title, a demurrer

to such a bill should be sustained. For such a case there is ade-quate and ample remedy at law. Under the Act of 1872, ch. 346, the plaintiff in an action of ejectment may recover not only the land in controversy, but *mesne* profits and damages for the eject-ment and detention of the premises up to the time of the determi-nation of the suit. As respects rents and profits in such cases, this action at law now affords as ample relief as could be obtained by a bill in equity.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, IRVING, and STONE, J.

*C. A. E. Spamer,* and *E. O. Hinkley,* for the appellant.

*J. Wilson Leakin,* for the appellees.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrer to a bill in equity filed by the appellees against the appel-lant and one Jacob Seeger. We have recently decided in the case of *Chappell vs. Funk, p.* 465 *ante,* that an appeal will lie from such an order where the demurrer goes to the entire bill. The motion to dismiss in the present case is therefore overruled.

The complainants are grand-children of Robert Carey Long, who died in 1833, seized in fee of real estate in the City of Baltimore, including an undivided moiety of a small lot of ground at the corner of Baltimore and Sharp streets. He left a will by which he devised his interest in this lot, with other property, to his son, Robert Carey Long, Jr., and his son-in-law, John F. Wells, *in trust,* for the uses and purposes thereinafter mentioned, and among the trusts to which the property is subjected is

that mentioned in the following clause of his will, viz., "Fifth. When my daughter, Sophia, or the youngest of the survivors shall attain the age of twenty-one years, then my said trustees shall divide the net income of the property, real, personal or mixed, quarterly or half-yearly among my eight children, namely, Ann, Margaret, Jane, Robert, Harriet, Sarah, Eleanor and Sophia, or among the survivors of them, and the issues of such as may be deceased, in just proportion, a whole part to each survivor, and a whole part among the issue of such as may be deceased, and my said trustees *shall continue* this division from time to time, so that the part of such as decease without issue shall be divided among the survivors, and the issue of such as decease leaving issue, *so long as any of the above named children shall survive,* and at the decease of the last, my said trustees, or such successors as they shall appoint, shall proceed to make a division by sale or otherwise of the property, and apportion the same among the issue of my children, equally, share and share alike." And by the *tenth* clause the testator directs his said trustees, "so long as my children shall survive, *to continue* the mode of payment of their respective portions, namely, to pay each in person," and then declares that his said trustees "shall have power to designate their successors, provided the Orphans' Court of Baltimore County approve thereof, and in the event of their dying and failing to name their successors, said Orphans' Court shall appoint trustees, having regard to the wishes of a majority of my children, expressed in writing to them on the subject."

The bill avers that four of the children named in this fifth clause have died leaving issue, who are the complainants, but that the other four are *still living,* though childless. It is plain, therefore, that as between trustee and *cestuis que trust,* the trust created by this clause is a still continuing and subsisting trust. It is also averred, that

both the trustees are dead, one having died in 1838, and the other in 1849, but the bill is silent as to whether or not their successors have been designated or appointed according to the power contained in the tenth clause, and there is no specific prayer for the appointment of any one in their place. If it had been the purpose of the complainants to ask a Court of equity to supply a trustee to manage the trust, in the place of those who have died and in default of appointment of their successors according to the terms of the will, it would have been wholly unnecessary, and so far as we can see from the averments of this bill, improper to make these defendants parties to such a proceeding. Such appointment could have been made simply upon the application of the complainants themselves, without adverse proceedings against any one, and the trustee so appointed would be the proper party to protect their rights and interests under this trust, and to assert title to the property against the defendants, or any other stranger in adverse possession thereof.

What then is the case made by this bill (which was not filed until July, 1880,) against these defendants? It charges, that the premises in question " with the improvements thereon are held under pretence by one Henry C. Hecht and Jacob Seeger, *who hold in contravention of the rights of your orators;* that they obtained their title through sundry *mesne* conveyances from one David Stewart, who was appointed a trustee *in a cause* in chancery; that complainants were *not parties* to that suit and neither the decree nor the deed of the trustee professed to, or could convey or alien any greater rights than those of the parties to the cause; that the will of Long being matter of public record, and filed as an exhibit in the chancery proceedings through which the defendants claim title, they were affected with notice of its contents, and could not acquire any greater title than it was within the power of the trustee in that case to convey, and he had

no power to convey the rights of the complainants ; that neither of the defendants is an innocent holder, but both of them were affected with notice of the trust in favor of the complainants, and that said property is now in their hands, subject to said trust ; and the complainants " further charge, that neither said Hecht nor said Seeger have accounted at any time unto your orators, although said Hecht has *been in possession of the property since* 18—."

Now in all this, there is no averment that the defend-ants acquired under their title from Stewart, any interest which would make them *tenants in common* with the complainants of this property. Even if that averment in connection with others contained in the bill, would be sufficient to sustain jurisdiction in equity. It is not averred who were parties to that proceeding, or when, or for what purpose the suit was instituted, and, for aught that appears, it may have been a creditor's bill with *proper parties*, for the sale of the testator's real estate to pay his debts. At all events, and whatever title they may have acquired, the bill plainly avers, that under that title, the defendants are holding the property in contravention of all the complainants' rights therein, that they are in possession under such holding, and that Hecht, (the demurring defendant,) has been so in possession for an indefinite number of years, since the death of the testator in 1833. It seems, therefore, very clear, that the complainants are seeking through the medium of a suit in equity, to recover property from parties who not only deny their title, but who are in possession holding adversely, under no tenancy in common with the complainants, and whose adverse holding may, for aught that appears, have continued for such a period as to have clothed them with a title, good even as against the undisputed owner of the paper title. For such a case, there is adequate and ample remedy at law. Under the law as it now stands, (Act of

1872, ch. 346,) the plaintiff in an action of ejectment, may recover not only the land in controversy, but *mesne* profits and damages for the ejectment and detention of the premises, up to the time of the determination of the suit. As respects rents and profits in such cases, this action at law now affords as ample relief as could be obtained by a bill in equity. There is nothing then, so far as we can perceive, to prevent a trustee, appointed in the place of the deceased trustees, if no one has been appointed under the will, from instituting his action of ejectment, and, if he can make out his title as against the defendants, from recovering not only the property, but the rents and profits thereof, for the benefit of the complainants, to the extent of their interests therein. And this, in our opinion is, so far as the case presented by the bill, affords us the means of judging, the only remedy now open to the complainants. The doctrine that the aid of equity cannot be invoked in a case where the remedy at law is plain, adequate and complete, is co-eval with the foundation of equity jurisprudence, and no instance of its application is more familiar or important than where the Courts forbid an action of ejectment from being carried on under the form of a bill in chancery. Without expressing any opinion as to the other grounds of demurrer relied on in argument, we are all clearly of opinion, that upon the case made by the bill before us, there is no jurisdiction in equity, and we cannot undertake to decide what the law would be if a different state of case were presented by additional averments. All that we can now do, is to reverse the order appealed from, and dismiss the bill without prejudice to any other proceeding the complainants may be advised to take in the premises.

*Order reversed, and bill*
*dismissed without prejudice.*

(Decided 9th February, 1882.)

ALVEY, J., dissented as to overruling the motion to dismiss.