MARTHA A. COWMAN vs. ALICE E. COLQUHOUN. THOMAS B. GHEQUIERE, and others vs. MARTHA A. COWMAN and SAMUEL KIRBY.

*When Equity will not relieve in an application for an Account of Rents and profits—When a Court of Law is the proper Forum—Mutation of the corpus of an Estate—Extinguishment of the Equitable title of Cestuis que trust to Realty— Transfer of Equitable title of Cestuis que trust—Act of 1785, ch. 72, sec. 4—Subsisting trust.*

Where there is an assertion of title by the complainants, and a positive and distinct denial of such title by the defendants, the tenants in possession, together with an exclusive reception of the profits for a long period, and other acts indicating an adverse holding by the tenants in possession, and knowledge of such adverse holding, and laches on the part of the complainants, relief cannot be afforded by a Court of equity. A Court of law is the proper forum for the determination of the controversy.

A testator devised and bequeathed his entire property, real, personal and mixed, except certain legacies specially designated, in trust for the uses and purposes mentioned in his will. Some years after the testator's death, a bill was filed by parties in interest asking for the sale of the real and leasehold estate of the testator, remaining unsold and in the hands of the trustees under the will, and that the proceeds arising from said sale be invested in safe and productive securities, subject to the same uses and purposes as limited, and declared in the testator's will concerning said estate and the income and revenue thereof. The Chancellor passed a decree dated the 25th of April, 1837, granting the relief prayed, and appointing a trustee who made sale of the property. The proceeds of the sale, exclusive of costs and commissions, were audited to the trustees under the will, for the uses and purposes mentioned therein. The report of the auditor was ratified and confirmed, and the trustee directed to apply the proceeds accordingly. A deed was executed and delivered by the trustee to the purchaser. On a bill filed by the only grandchildren of the testator, together with the husband of one of such grandchildren,

asking· for an account of the rents and profits, from parties in possession of the property who claimed through *mesne* conveyances from the purchaser, it was HELD :

1st. That under the decree of the Chancellor of the 25th of April, 1837, and the deed from the trustee to the purchaser, the *corpus* of the estate was merely changed; and the equitable title of the *cestuis que trust* to the realty was extinguished, and was transferred to the fund created by the sale.

2nd. That the decree of the Chancellor, was authorized by the Act of 1785, chap. 72, sec. 4.

A testator devised and bequeathed the whole of his estate, certain designated legacies excepted, to trustees for certain purposes, and after making provision with respect to the net income of the estate, directed that on the decease of the longest survivor of his children, said trustees, or such successors as they should appoint, should proceed to make a division by sale or otherwise of the property, and apportion the same among the issue of his children, equally, share and share alike.   HELD :

That the trust created by the will was a subsisting trust—four of the children of the testator still surviving—and not until the death of all of them did the trust terminate by a division of the *corpus* of the estate among the grandchildren; and until the occurrence of that event the grandchildren had no rights except as recipients of their portion of the income; and this they must receive from the trustees appointed by the will, or their successors.

APPEALS from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed against Martha· A. Cowman, and Samuel Kirby by Thomas B. Ghequiere, Alice E. Colquhoun and others, the only grandchildren of the late Robert Carey Long, together with the husband of one of said grandchildren.   The bill charged that the premises in question, certain property in the City of Baltimore, were held under pretence of title by the said Cowman and Kirby and in contravention of the rights of the complainants.   It prayed for an account of rents and profits, and for the sale of the property and the investment of the proceeds in some safe and productive

funds, subject to the provisions of the trust declared in the will of the said Robert Carey Long. The defendants answered. The Court (DOBBIN, J.,) on the 4th of March, 1880, passed a decree which directed that the case be referred to the auditor to state an account charging the defendant Martha A. Cowman with one-seventh of the net annual value of the property and improvements on Lexington street, particularly described in the bill of complaint, from the first of January, 1862, to the first of December, 1876, and that the defendants be charged with one-seventh of the net annual income from the first day of December, 1876, to the date of the rendition of the account, deducting therefrom one-seventh part of such part of the annual value of the said property as shall appear to be due to the permanent improvements put upon said property by the said defendants since 1862, when they went into possession, and that the amount so charged by the said account, be allowed Alice E. Colquhoun, one of the complainants. Subsequently the defendants applied to the Court to reconsider its decision as to the claim of Alice E. Colquhoun. This application was denied by order of the 14th of December, 1881. From the order of the 4th of March, 1880, referring the case to the auditor, and from the order of the 14th of December, 1881, dismissing the application for a rehearing, the defendant Cowman appealed. On the 17th of July, 1882, the Court passed an order dismissing the bill as to Thomas B. Ghequiere, John Stearns and Mary A. Stearns, his wife, and Walter S. Long. From this order said parties appealed.

[No appeal was taken by Samuel Kirby; but it was agreed between counsel that he should have the same benefit of the appeal as if he had appealed.—REP.]

The cause was argued before ROBINSON, YELLOTT, STONE, IRVING, and RITCHIE, J.

*Samuel Snowden,* and *Severn Teackle Wallis,* for Martha A. Cowman.

*J. Wilson Leakin,* for Thomas B. Ghequiere, Alice E. Colquhoun and others.

YELLOTT, J., delivered the opinion of the Court.

These appeals are from the decree of the Circuit Court of Baltimore City, granting the relief prayed for to Alice E. Colquhoun, one of the complainants in the bill filed in the cause, and dismissing the bill as to the other complainants. The defendants below, Cowman and Kirby, are the appellants in the one appeal, and the complainants below, Ghequiere, Stearns and wife, and Walter S. Long, in the other.

The complainants are the grandchildren of Robert Carey Long, who, by his last will and testament, admitted to probate on the 26th day of February, 1833, gave, devised and bequeathed all his property, real, personal, and mixed, except certain legacies specially designated, to his son, Robert C. Long, Jr., and his son-in-law, John F. Wells, in trust, for the uses and purposes therein mentioned. In the fifth clause of said will are the following provisions:

"When my daughter Sophia, or the youngest of the survivors shall attain the age of twenty-one years, then my said trustees shall divide the net income of the property, real, personal, and mixed, quarterly or half-yearly, among my eight children, namely: Ann, Margaret, Jane, Robert, Harriet, Sarah, Eleanor and Sophia, or among the survivors of them, and the issue of such as may be deceased, in just proportions, a whole part to each survivor, and a whole part among the issue of such as may be deceased; and my said trustees shall continue this division from time to time, so that the part of such as decease, without issue, shall be divided among the survivors, and

the issue of such as decease leaving issue, so long as any of the above named of my children shall survive, and at the decease of the last, my said trustees, or such successors as they shall appoint, shall proceed to make a division by sale, or otherwise, of the property, and apportion the same among the issue of my children equally, share and share alike."

The bill of complaint avers that both of the trustees named in said will are now dead; but discloses the further fact that several of the children of the testator are still living. It thus becomes apparent that the period has not yet arrived when, under the provisions contained in the fifth clause of said will, there is to be a division by sale, or otherwise, of the property, and an apportionment of the same among the issue of the children of the testator, equally, share and share alike.

It appears, however, from the averments in the bill and the proof in this cause, that on the 22nd day of February, 1837, a bill was filed in chancery; in which bill all the children of the testator were either parties complainant or defendant, except Robert C. Long, Jr., who, having made a deed of trust of his interest in the property, was represented by his trustees. The bill asks for "a sale of the real and leasehold estate of the said Robert Carey Long, late of the City of Baltimore, deceased, still remaining unsold and in the hands of the said trustees under his will, and that the proceeds arising from said sale be invested in safe and productive securities, subject to the same uses and purposes as are limited, declared and mentioned in and by the said will, of and concerning the said estate, and the income and revenue thereof."

In this suit the Chancellor passed a decree dated 25th of April, 1837, granting the relief prayed for in the bill of complaint, and appointing David Stewart trustee, who, under said decree, made sale of the property in question. The whole of the proceeds of this sale, exclusive of costs

and commissions, was audited to Robert C. Long, Jr., and John F. Wells, the trustees named by the testator in his will, "in trust, for the uses and purposes of the last will and testament of Robert C. Long." This report of the auditor was "ratified and confirmed" by the Chancellor, "and the trustee is directed to apply the proceeds accordingly, with a due proportion of interest that has been or may be received." A deed bearing date May 5th, 1838, was executed and delivered by the trustee, David Stewart, to Edward Laroque, the purchaser, from whom, through mesne conveyances, the defendants below derived their title to the property now in controversy.

It thus becomes apparent that, by the decree of a Court of competent jurisdiction, there has been a transmutation of the corpus of the estate, and that the funds into which the realty was converted, passed into the hands of the trustees named in the will. By the provisions of the will these funds were to remain in the hands of said trustees or their successors, until the death of all the children of the testator; an event which has not yet occurred, as several are still living. Not until the death of all the children can the grandchildren claim a distribution of the corpus of the estate; and for payment to them of their portion of the accruing income, the will clearly designates the trustees or their successors as the proper parties to whom application should be made.

The complainants in this cause have, however, elected to proceed against the present holders of the real estate sold under the decree of the Chancellor. This proceeding is based upon the assumption of a tenancy in common. Not having been made parties to the proceedings in chancery, they claim that their undivided interest in the estate was not affected by the decree. If they are tenants in common, an averment in their bill of complaint, taken in connection with the answer of the defendant Cowman, would exclude them from relief in a Court of equity.

They aver that the defendants hold "in contravention of their rights," or, in other words, obstruct them in the enjoyment of their rights in the property as tenants in common.    The defendant Cowman, in her answer, denies that she holds "said property in contravention of the rights of the complainants;" but this negation is put upon the ground of the non-existence of such rights.    She asserts "a title clear and freed from the claim of any such persons."    Here is a distinct, unequivocal and absolute denial of the title of the complainants.    In a case of this sort, when there is an assertion of title by the one party, and a peremptory denial of such title by the other, together with an exclusive perception of the profits for a long period, and other acts indicating an adverse holding by the tenant in possession, and knowledge of such adverse holding, and *laches* on the part of the claimant, relief cannot be afforded by a Court of equity.    A Court of law is the proper forum for the determination of the controversy.

In the case of *Boone vs. Boone,* 3 *Md. Ch. Dec.,* 497, the title of the complainants, claiming as co-tenants, being disputed by the defendants, the Chancellor refused to decree a partition, and sent the complainants to a Court of law to establish their title ; citing in support of his decision, *Wilkins vs. Wilkins,* 1 *John. Ch. Rep.,* 111; *Cartright vs. Poultney,* 2 *Atk.,* 380; *Willet, Ex'r vs. Beall,* 2 *G. & J.,* 468.

In the very recent case of *Hecht vs. Colquhoun,* in 57 *Md.,* 563, a case nearly identical with the one now under consideration, the controversy growing out of the same will, this Court decided that equity could not afford relief, and that if there were any remedy it should be sought for in an action of ejectment.

In the case of *Boone vs. Boone,* the Chancellor passed an order designating twelve months as the period within which the complainants should proceed to establish their

134        MARYLAND REPORTS.

Cowman *vs.* Colquhoun.   Ghequiere *vs.* Cowman, *et al.*

title at law; in the meanwhile retaining the bill for future action dependent upon the result of the suit in ejectment. No such order could be properly passed in this cause; it being apparent that the complainants could not, at present, enforce their alleged rights in a Court of law. The trust created by the will of the elder Long is a subsisting trust. Four of the children of the testator yet survive, and not until the death of all of them, does the trust terminate by a division of the *corpus* of the estate among the grandchildren. Until the occurrence of that event the complainants have no rights except as recipients of their portion of the income. This they must receive from the trustees appointed by the will, or their successors. The original trustees are dead, but the duration of a trust is not dependent upon the lives of those appointed to execute it. There is no extinguishment of such estate produced by the death of the fiduciary agent. "It is a rule that admits of no exception, that equity never wants a trustee, or in other words, that if a trust is once properly created, the incompetency, disability, death, or non-appointment of a trustee shall not defeat it." 1 *Perry on Trusts, sec.* 38.

The defendants in this cause assert an adverse claim to the real estate held by them, and the intervention of the trustees controlling the *corpus,* and clothed with the legal title, would be necessary if there were any ground on which an action of ejectment could be successfully maintained. The mode of procedure is clearly pointed out in the case of *Hecht vs. Colquhoun,* where it is said:

"If it had been the purpose of the complainants to ask a Court of equity to supply a trustee to manage the trust, in the place of those who have died, and in default of appointment of their successors according to the terms of the will, it would have been wholly unnecessary, and so far as we can see from the averments of this bill, improper to make these defendants parties to such a proceeding.

Such appointment could have been made simply upon the application of the complainants themselves, without adverse proceedings against any one, and the trustee so appointed would be the proper party to protect their rights and interests under this trust, and to assert title to the property against the defendants, or any other stranger in adverse possession thereof."

The remaining question is important, as its determination may interpose an obstacle to future unnecessary litigation. That question relates to the effect of the decree of the Chancellor upon the rights now in controversy. Did the decree in chancery operate an extinguishment of the equitable title of all the children and grandchildren of the testator to the property specifically designated in the will, and transfer their rights to the trust-fund created by the sale and audit under said decree? The sale decreed by the Chancellor was not for partition and distribution. There was no destruction of the *corpus,* but merely a transmutation from unproductive real estate into productive funds to be invested for the purposes of the trust. The trustees could have accomplished this object by an execution of the power given them by the will. Had they done so the result would have been an extinguishment of the equitable title of the *cestuis que trust* to the realty, and its transference to the fund created by the sale. In the eighth clause of the will the testator directs that "if there should be no debts owing, then my said trustees are to sell only such as may be unproductive, or likely to so continue, and invest the proceeds more advantageously."

At the time of the institution of the proceedings in chancery, the contingency contemplated by the testator had arisen. There were debts owing, and the productive real estate had been sold in order to provide funds for the payment of those debts. The remaining property was, in its existing condition, inadequate for the purposes of

136        MARYLAND REPORTS.

Cowman *vs.* Colquhoun.   Ghequiere *vs.* Cowman, *et al.*

the trust.  It was the duty of the trustees to sell, "and invest the proceeds more advantageously."  They omitted to perform this duty.  An omission to perform a duty, by one acting in a fiduciary capacity, is a neglect to perform such duty.

The Act of 1785, ch. 72, sec. 4, provides "That if any person hath died, or shall die, leaving real or personal estate to be sold for the payment of debts, or other purposes, and shall not by will or other instrument in writing, appoint a person or persons to sell or convey the same property, or if the person or persons appointed for the purpose aforesaid shall *neglect* or refuse to execute such trust, or if such person or persons, or any of them, shall die before the execution of such trust, so that the sale cannot be made for the purposes intended, in every such case the Chancellor shall have full power and authority, upon *application or petition from any person or persons interested* in the sale of such property, to appoint such trustee or trustees for the purpose of selling and *conveying such property*, and applying the money arising from the sale to the purposes intended, as the Chancellor shall, in his discretion, think proper."

These provisions of the Act of 1785 are embodied in the Md. Code, Art. 16, sec. 66, and in *Fulton, et al. vs. Harman, et al.*, 45 *Md.*, 266, this Court says:

"It is not required that all the parties interested in the sale should join in the application for the appointment of a trustee under this statutory provision, but the Court may appoint a trustee and direct a sale upon the application of only a part of those interested."

In the proceedings in chancery all the children of the testator, except Robert C. Long, Jr., who was represented by his trustees, were made parties.  The averments in the bill disclosed the fact that the productive property, "constituting in a great measure the source from which the testator expected his said trustees to be able to meet the

OCTOBER TERM, 1882.    137

Cowman *vs.* Colquhoun.   Ghequiere *vs.* Cowman, *et al.*

provisions of the trust created, had been sold to satisfy the debts of the said testator, and the heirs subsisting on said property." The bill further avers that the income from the remaining property is "scarcely adequate to meet the first provision of said trust for the support of those of the testator's daughters now entitled to the benefit of that provision."

A sale is asked for and an investment of the proceeds in "safe and productive securities," for the benefit of the *cestuis que trust*, in conformity with the provisions of the will. Under a commission, the proof taken fully established the fact that the property was unproductive and, in its existing condition, inadequate for the purposes of the trust. On this proof the Chancellor decreed a sale. This sale was ratified and confirmed, and the proceeds were audited to the trustees appointed by the testator, "for the uses and purposes of the last will and testament of Robert C. Long, deceased." The report of the auditor was "ratified and confirmed," and the trustee "directed to apply the proceeds accordingly."

It thus becomes apparent that the decree of the Chancellor merely changed the *corpus* of the estate, which mutation could have been produced by the action of the trustees in executing the power contained in the will. The Chancellor decreed that to be done which the trustees omitted or neglected to do. The Act of 1785 clearly authorized the proceeding; the real estate was sold under the decree of a Court of competent jurisdiction; and the equitable title of the *cestuis que trust* to the property in controversy was extinguished by said decree and the deed from Stewart, the trustee, to Laroque, the purchaser.

From what has been said it follows, that the decree of the Court below establishing the claim of Alice E. Colquhoun to the relief sought for must be reversed; and the

decree dismissing the bill as to the other complainants affirmed, and the bill dismissed.

> *Decree in favor of Alice E. Colquhoun* reversed.
>
> *Decree dismissing the bill as to the other complainants affirmed ;*
>
> *and bill dismissed.*

(Decided 29th March, 1883.)·

ROBINSON and IRVING, J., filed the following separate opinion:

We agree that the decree appealed from in this case must be reversed, and that Alice E. Colquhoun, the appellee, is not entitled to the relief for which she has prayed; but we rest our concurrence in the decree to be passed, solely upon two grounds—first, that as against Miss Cowman, the appellee cannot proceed directly in her own name, but, being a *cestui que trust* only, should have first secured the appointment of a trustee through whom to work out any rights she was supposed to have. And, secondly, because of her *laches* in delaying for so long a period, to assert her rights.  Conceding that the Chancellor's decree passed in 1837 did not bind the appellee because she was not a party to the trust, (upon which we express no opinion,) still Miss Cowman, and those under whom she claims acquired title under a sale made, under that decree, in 1838, since which time the appellant and those under whom she claims have been holding under color of title, and the appellee took no step, to assert her supposed paramount right, until after such delay as renders it inequitable to grant her relief.  Appellee's mother died in August, 1850, and her right to participate in the revenues of the trust at once arose.  She was of full age in 1849, and was twenty-two years old when her mother died. This bill was filed in December, 1877,

more than twenty-seven years after her right accrued. She has shown no sufficient excuse for her delay. Being, upon the death of her mother, one of the beneficiaries of the trust, she must be presumed to have known of her rights, and ought to have asserted them. We think the case clearly covered by the repeated decisions of this Court on the subject of *laches,* and especially by the case of *McCoy, and others vs. Poor,* 56 *Md.,* 197.