MONTEBELLO LAND COMPANY *v.* FRANK NOVAK
REALTY COMPANY

MAYOR AND CITY COUNCIL OF BALTIMORE CITY
*v.* FRANK NOVAK REALTY COMPANY

[Nos. 42, 43, April Term, 1934.]

*Decided June 12th, 1934.*

The causes were argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Charles P. Coady, Jr.*, with whom were *Coady & Farley* on the brief, for the Montebello Land Company, appellant.

*Ernest F. Fadum, Assistant City Solicitor*, with whom was *R. E. Lee Marshall, City Solicitor*, on the brief, for the other appellants.

*C. Arthur Eby*, with whom was *John M. Requardt* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Frank Novak Realty Company began a suit in equity against the Mayor and City Council of Baltimore, a municipal corporation, William A. Parr, Buildings Engineer for Baltimore City, Wallace MacWilliams, Chairman, George W. Bahlke, William W. Cator, Albert A. Fankhanel, C. M. Zacharski, constituting the Board of Zoning Appeals of Baltimore City, and The Montebello Land Company, a body corporate, defendants, (1) to have Ordinance No. 422 of the Mayor and City Council of Baltimore, approved April 24th, 1933, declared illegal, null, and void; (2) to have the Building Engineer and the Board of Zoning Appeals enjoined from doing any act, or authorizing any act to be done, pursuant to the terms of this ordinance; and (3) to enjoin The Montebello Land Company, its officers and agents, from erecting or constructing any building upon any part of its land by virtue of any permit issued under the provisions of said ordinance; and (4) to afford to the plaintiff such other and further relief as its case may require. A demurrer of similar form was filed by every one of the four defendants. These demurrers were based upon the validity of the ordinance assailed, and, on the 7th of February, 1934, the chancellor overruled the demurrers and ordered the defendants to answer within thirty days. The Montebello Land Company took an appeal from this

order, and was followed by the other three defendants entering a like appeal by a single order, and then all obtained an order from the chancellor extending the time for the defendants to answer to fifteen days from the final mandate from this court on the appeals.

After this preliminary statement of the procedure, the way is clear to the consideration of the allegations of the bill of complaint. *Brooks v. Sprague,* 157 Md. 160, 164, 145 A. 375; *Chappell v. Funk,* 57 Md. 465, 472; *Hecht v. Colquhoun,* 57 Md. 563, 564; *Meyer v. Saul,* 82 Md. 459, 465, 33 A. 539; *Darcey v. Bayne,* 105 Md. 365, 366, 66 A. 434.

The single question here presented is the validity of the ordinance. Sections 2 and 3 of the ordinance relate, respectively, to the manner of authenticating the plat, which was made a part of the ordinance, and to the date the ordinance became effective, and the substance of the ordinance is embraced in the first section, which provided that a specific portion of land in the municipality, which was located by the original Zoning Ordinance (Ordinance No. 1247, approved March 30th, 1931) within the "E Area forty (40) foot height district," should be changed to the classification, "D Area restricted forty (40) foot height." The land thus changed was bounded on the south by a line parallel to and about 222 feet north of Thirty-fifth Street, and on the east by an alley, whose eastern boundary line was 150 feet west of the western line of Hillen Road; on the west by Ednor Avenue and on the north by two lines parallel with the southern boundary; the longer or western line of 2,024 feet, being 833 feet north of the southern parallel, and the shorter or western line of 893 feet, being 645 feet north of the southern parallel. In other words, the portion so reclassified has between it and the highway on the east, called Hillen Road, an alleyway and a block of land 150 feet in width, and between it and the highway on the south, called Thirty-fifth Street, a block of land 222 to 227 feet in width. These two blocks of contiguous land are in E Area, but the land bounding on the north, and the land

which is separated from this section on the west by Ednor Road, are in the D Area.

Before this reclassificaton was made The Montebello Land Company, a body corporate, owned in fee simple all that unimproved land extending northerly from the center line of Thirty-fifth Street between Hillen Road and Ednor Road; and the Frank Novak Realty Company, a body corporate, was the owner in fee simple of all that unimproved land extending southwardly from the center line of Thirty-fifth Street between Hillen Road and Ednor Road. This land so lying north and south of the center line of Thirty-fifth Street and bounded by the alley and Ednor Road on the east and west, was, before the passage of the ordinance in question, all in E Area.

The Zoning Ordinance, approved on March 30th, 1931, (Ordinance No. 1247) divided the City of Baltimore, with reference to its area, into seven classes of area districts, which were designated by the first seven letters of the alphabet; and, with reference to the height of buildings permitted, into five classes of height districts; and, with reference to the uses permitted, into four classes of use districts, which, together with the height districts, were designated, respectively, by an appropriate descriptive term. In the zoning of the city pursuant to the Zoning Ordinance, the land lying north and south of the center line of Thirty-fifth Street and between Hillen Road and Ednor Road had been placed in E Area, forty-foot height, and residential use district. The zoning so made remained in effect until Ordinance No. 422 was passed and approved on April 24th, 1933, when the ordinance in question became effective.

In an E Area, and residential use district, all buildings to be constructed, extended, altered, or occupied must be of a detached or semi-detached type, and groups of row houses are not permitted; and the maximum number of sixteen families per acre is permitted to be housed on any lot. In a D Restricted Area and Residential Use district, however, the restrictions are relaxed to per-

mitting buildings to be in groups of as many as six single-family habitations designed and erected as a unit on a lot, and twenty families per acre may be housed on any lot. The modification thus made is resisted upon the ground that the new ordinance was not properly enacted, because after a formal protest against its passage by the plaintiff as an affected landowner, the ordinance was passed by a majority vote of eleven votes in the affirmative and eight votes in the negative, which was not the favorable vote of three-fourths of all the members of the City Council of Baltimore, the legislative body of the municipality.

In support of its contention that a majority vote in favor of the ordinance is not sufficient for its validity, the plaintiff relies upon these provisions of the Enabling Act of 1927, ch. 705 (now 66B of Vol. 3 of Code), with respect to the subject matter under consideration:

"Sec. 5. Changes. Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change, signed by the owners of 20 per cent. or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending 100 feet therefrom, or of those directly opposite thereto extending 100 feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of the previous Section relative to public hearings and official notice shall apply equally to all changes or amendments."

It will be observed that, as a condition precedent to the requirement of the passage by a three-fourths vote of an ordinance that makes a change in the regulations, restrictions, or boundaries of the districts into which the municipality is divided for the purpose of zoning, it is necessary that the protest contemplated by the statute be signed by the owners of at least twenty per cent. (a) of

the area of the lots included in such proposed change; (*b*) or of those immediately adjacent in the rear thereof extending 100 feet therefrom; (*c*) or of those directly opposite thereto extending 100 feet from the street frontage of such opposite lots. So, the possible protestants, whose protests will necessitate the passage of the ordinance by the favorable vote of three fourths of all the members of the legislative body, fall into the indicated three classes, which have the common requisite of being the owners of at least twenty per centum or more of three specified areas. The plaintiff is not within the first class (*a*), because none of the area of the lots of which it is the owner is within the area of the lots included in the proposed change. Nor can the plaintiff qualify as an owner within the second class (*b*), since none of its land is immediately adjacent in the rear of the area included in the proposed change, extending one hundred feet therefrom. Nor is the plaintiff an owner embraced by the third class (*c*), as it does not own the area of any lots directly opposite the area of lots composing the proposed change, extending one hundred feet from the street frontage of the opposite lots. In other words, the plaintiff is not the owner of any lots or area of land within one hundred feet of any boundary line of the area included in the change proposed by the new ordinance, that became efective upon its passage. All of the land of the plaintiff is *south* of Thirty-fifth Street, and the area of the lots included in the proposed change is everywhere at least two hundred and twenty-two feet *north* of Thirty-fifth Street. So the width of that street and of a parcel of land two hundred and twenty feet wide are between the plaintiff's land and the area changed.

For these reasons, the conditions were not fulfilled to make it necessary to the validity of the ordinance that it be passed by a favorable vote of three-fourths of all the members of the legislative body of the municipality.

The ordinance was within the scope of the power conferred by the General Assembly, and was enacted by the requisite vote. *Lipsitz v. Parr*, 164 Md. 222, 228-230,

164 A. 743. The demurrer should have been sustained and the bill of complaint dismissed.

*Ruling on demurrer reversed with costs to the appellants in Nos. 42 and 43, and cause remanded for a decree in conformity with this opinion.*