## Radnor, Ithan and St. Davids Civic Association Appeal

*Butler, Beatty, Greer & Johnson*, for appellants.
*C. William Kraft, Jr.*, for Township of Radnor.
*Greenwell & Porter*, for respondents.

DIGGINS, J., August 3, 1954.—This is an appeal by several civic associations and individual property owners in the Township of Radnor, Delaware County, from Ordinance No. 769 of the Township of Radnor, and The Pennsylvania Company for Banking and Trusts,

Benjamin Chew, Jr., and David Stephenson, trustees of the estates of Martha Brown and Mary J. B. Chew, are intervening respondents.

The matter came on for hearing on June 11, 1954, before Diggins, J., at which time counsel for the respective parties in interest filed a stipulation of facts together with certain exhibits, thus creating only a question of law, and from the record, stipulation and requests we make the following

### Findings of Fact

1. The Radnor, Ithan and St. Davids Civic Association of Delaware County is a nonprofit corporation formed July 12, 1950, and is a party appellant in this proceeding.

2. The Aldwyn Civic Association is an unincorporated association formed December 1, 1947, and is a party appellant in this proceeding.

3. The North Wayne Protective Association, Inc., is a nonprofit corporation formed September 18, 1890, and is a party appellant in this proceeding.

4. The Wayne Business Association is an unincorporated association formed in 1938 and is a party appellant in this proceeding.

5. Robert Emlen and Cora P. Emlen are taxpayers of the Township of Radnor, residing in and owning the premises known as 116 Cambria Court, St. Davids, by virtue of deed dated February 1, 1949, and recorded at Media in deed book no. 1489, page 346.

6. Henry D. Booth, Jr., and Leanora D. Booth are taxpayers of the Township of Radnor residing in and owning the premises known as 114 Cambria Court, St. Davids, by virtue of deed dated May 3, 1941, and recorded at Media in deed book no. 1132, page 608.

7. Margaret V. Doyle is a taxpayer of the Township of Radnor residing in and owning the premises known as 112 Cambria Court, St. Davids, by virtue of deed

dated April 22, 1942, and recorded at Media in deed book no. 1194, page 612.

8. Robert A. Walker and Elizabeth Walker are taxpayers of the Township of Radnor, residing in and owning the premises known as 110 Cambria Court. St. Davids, by virtue of deed dated November 16, 1951, and recorded at Media in deed book no. 1594, page 304.

9. Edward C. McLaughlin and Julia A. McLaughlin are taxpayers of the Township of Radnor, residing in and owning the premises known as 123 Cambria Court, St. Davids, by virtue of deed dated July 10, 1953, and recorded at Media in deed book no. 1676, page 178.

10. Respondent is a township of the first class situate in Delaware County and is a political subdivision of the Commonwealth of Pennsylvania and subject to the provisions of The First Class Township Code, as amended May 27, 1949, P. L. 1955, 53 PS §19092-101 et seq.

11. Section 3105 of article XXXI of The First Class Township Code of May 27, 1949, P. L. 1955, dealing with amendments to zoning ordinances, provides as follows: "Such regulations, restrictions, and boundaries may, from time to time, be amended, supplemented, changed, modified, or repealed. In case, however, of a protest against such change, signed by the owners of twenty per centum or more, either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear or in the front or to either side thereof extending one hundred feet therefrom. Such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the board of township commissioners. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments."

12. The Radnor Township Zoning Ordinance of 1928, as amended, provides in section 1704 as follows

with respect to amendments of the zoning ordinance: "In case of a protest against such change, signed by the owners of twenty (20) per cent or more, either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear or in the front or to either side thereof extending one hundred (100) feet therefrom, such amendment shall not become effective except by the favorable vote of three-fourths (¾) of all the members of the Board of Township Commissioners."

13. The Radnor Township Zoning Ordinance of 1928, as amended, provides in section 203 as follows with respect to boundary tolerances: "BOUNDARY TOLERANCES. Where a district boundary line divides a lot held in single and separate ownership at the effective date of this Ordinance, the use regulations applicable to the less restricted district shall extend over the portion of the lot in the more restricted district a distance of not more than fifty (50) feet beyond district boundary line."

14. On or about May 13, 1953, The Pennsylvania Company for Banking and Trusts, Benjamin Chew, Jr., and David Stephenson, trustees of the estates of Martha Brown and Mary J. B. Chew, being the owners of a 56-acre tract of land on the northerly corner of Lancaster Avenue and Radnor-Chester Road in the Township of Radnor, applied to the board of commissioners to change the said tract of land from R-1 residential to C-1 commercial, and in pursuance of said application the board of township commissioners duly advertised a public hearing on the proposed zoning amendment, which district is more fully described as follows: That tract of land bounded on the south by Lancaster Pike for 1,530 feet more or less measured westerly from the intersection of the center lines of the Radnor and Chester Road and Lancaster Pike, bounded on the westerly side for 768 feet more or less

by lands of Frederick L. Hogg, Margaret V. Doyle, Henry D. Booth and Robert L. Emlen, thence a further distance of 309 feet more or less along lands of Emlen and John H. Saunders to the right of way of the Pennsylvania Railroad; along that right of way for approximately 1,548 feet to corner of other lands of the Pennsylvania Railroad Company, bounded on the north for approximately 711 feet by such other lands of the Pennsylvania Railroad Company, thence further approximately 209 feet along land of Elizabeth Bennett to corner of lands of Evan Randolph, Jr., along Randolph's land 381 feet more or less, by various courses, to the center line of Radnor and Chester Road, which is the eastern boundary, thence along same approximately 1,460 feet to the place of beginning; the whole containing approximately 56 acres, be the same more or less.

15. The admitted purpose of the owners in applying for a zoning amendment changing the land to C-1 commercial is to enable the owners to develop the subject tract for a regional shopping center.

16. Pursuant to said advertisement, the Board of Commissioners of the Township of Radnor did on June 24, 1953, and July 1, 1953, hold a public hearing in the Radnor Township Grammar School Auditorium on the question of rezoning the said tract.

17. On or before August 4, 1953, and prior to any action being taken by the board of commissioners concerning the adoption of the proposed zoning change, a protest against such change was filed with the board of township commissioners, signed by the owners of 20 percent or more of the area of the lots immediately adjacent to the northerly side thereof, extending 100 feet therefrom.

18. On the 21st day of September, 1953, the applicants for the proposed zoning change applied to the board of township commissioners to amend their ap-

plication for change of zoning so as to eliminate from their application two 100-feet wide strips on the northwesterly and southeasterly portions of the tract. The amendment requested was allowed and made.

19. In response to the request of the applicants, the board of township commissioners did duly thereafter cause a second advertisement of an additional public hearing to be made, which public hearing was to be held concerning the rezoning of the subject tract in conformity with the amended application, and in pursuance of such advertisement a public hearing was held in the Radnor Township High School auditorium on October 23, 1953.

20. On October 19, 1953, and prior to any action being taken on the aforesaid amended application for zoning change, a protest against such change as requested in the amended application was filed with the board of township commissioners, signed by the owner of 100 percent of the area of the lots immediately adjacent to the southerly side thereof, extending 100 feet therefrom.

21. On the 16th day of November, 1953, the applicants for the proposed zoning change applied to the board of commissioners to amend the application to rezone the subject tract so as to exclude therefrom a strip of land 100 feet wide along the northerly side of Radnor-Chester Road. The amendment requested was allowed and made.

22. In response to the request of the applicants, the board of township commissioners did duly thereafter cause a third advertisement of an additional public hearing to be made, which public hearing was to be held concerning the application as further amended, and in pursuance of such advertisement a public hearing was held in the Radnor Township High School Auditorium on December 22, 1953.

23. On December 28, 1953, at a meeting of the Board of Commissioners of the Township of Radnor, a motion to adopt ordinance no. 769 was carried by a vote of four to three, being all of the seven members of the board.

24. Ordinance no. 769 is as follows:

## "ORDINANCE NO. 769

"AN ORDINANCE TO AMEND THE RADNOR TOWNSHIP ZONING ORDINANCE OF 1928, AS AMENDED AND SUPPLEMENTED, BY AMENDING THE ZONING MAP OR MAPS ATTACHED TO AND FORMING A PART OF SAID ORDINANCE.

"The Board of Commissioners of the Township of Radnor, Delaware County, Pennsylvania, does enact and ordain:

"SECTION 1. That the Radnor Township Zoning Ordinance of 1928, as amended and supplemented, and the Zoning Map or Maps attached to and forming a part thereof, be and the same are hereby amended so that

"That tract of land bounded on the south by the center line of Lancaster Pike for 1,315 feet more or less, measured westerly from a point in the center line of Lancaster Avenue 115 feet west of the intersection of the center line of Radnor-Chester Road and Lancaster Pike, bounded on the westerly side for 815 feet more or less by a line 100 feet from and parallel to the line of lands of Frederick L. Hogg, Margaret V. Doyle, Henry D. Booth, and Robert L. Emlen, thence a further distance of 375 feet more or less still along a line 100 feet from and parallel to the line of lands of Emlen and John H. Saunders to the right-of-way of the Pennsylvania Railroad, along that right-of-way for 1,568 feet more or less to a corner of other lands of the Pennsylvania Railroad Company, bounded on the north for approximately 711 feet by other lands of the Pennsylvania Railroad Company thence still further approximately 109 feet along land of Elizabeth Bennett to a

point 100 feet from the lands of Evan Randolph bounded for a further distance by a line 100 feet from and parallel to Randolph's land 452 feet more or less by various courses to a line 100 feet west of and parallel to the westerly curb line of Radnor-Chester Road, which is the eastern boundary, thence along the same approximately 1,260 feet to the center line of Lancaster Pike the place of beginning, the whole containing approximately 49.5 acres, be the same more or less, be and the same hereby is changed from R-1 Residence District to C-1 Commercial District.

"ENACTED AND ORDAINED by the Board of Commissioners of Radnor Township, Delaware County, Pennsylvania, this 28th day of December, A. D. 1953.

"THE TOWNSHIP OF RADNOR

By JOHN F. CHRISTIE

President

"Attest:

RICHARD W. BARRINGER

Secretary"

25. Ordinance no. 769 purported to become effective January 10, 1954, which was 10 days after the publication thereof on December 31, 1953.

26. Ordinance no. 769 was again published January 15, 1954, which, if controlling, would mean that the ordinance became effective January 25, 1954.

### *Discussion*

The question of law here raised is whether or not the action of the Township of Radnor in adopting its ordinance no. 769 with a simple majority is effective under the circumstances since section 1704 of the zoning ordinance of the Township of Radnor which follows verbatim section 3105 of the First Class Township Code, provides as follows: "In case, however, of a protest against such change, signed by the owners of twenty percentum or more, either of the area of the

lots included in such proposed change, or of those immediately adjacent in the rear or in the front or to either side thereof extending one hundred feet therefrom. Such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the board of township commissioners."

The township contends that the real purpose and intent of the statute and the zoning ordinance is to provide a protective buffer zone of 100 feet between an area being rezoned and the lands of abutting property owners unless the amending ordinance is adopted by a three-fourths vote. The appellants contend that a simple majority was insufficient because the action of the owners of the property in question in twice amending their petition for the change in zoning so as to withdraw from the application a strip of 100 feet of the land involved was a subterfuge and ineffective to prevent the operation of section 1704 of the Zoning Ordinance and section 3105 of the First Class Township Code.

The question of law therefore here presented is whether or not such action, admittedly done for the purpose of avoiding the three-fourths vote made necessary by section 1704 and section 3105, supra, is legally effective for that purpose. We are of the opinion that it is.

A well founded principle of law since time immemorial has been that one may avoid the impact of a particular statute but may not evade such impact: 43 Am. Jur. §10. If the changes are actual and not merely simulated, although made for the purpose of avoiding the statute, they do not constitute illegal evasion.

Webster defines the word "evade" as meaning "to take refuge in evasion", "to use artifice in avoidance" and defines the word "avoid" to mean "to keep away from", "to keep clear", etc., and "avoidance" is said

to be "the act of avoiding or keeping clear of", so that in the English language itself there is a clear distinction between "avoidance" and "evasion", the former being an acceptable means and the latter an unacceptable means.

This theory was the subject of discussion by the late Mr. Justice Holmes, of the United States Supreme Court in Bullen v. State of Wisconsin, 240 U. S. 625, 630, 631, wherein he said: "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law . . ."; and again, this great jurist said in the case of Superior Oil Company v. State of Mississippi, 280 U. S. 390, 395, 396: "The fact that it (vendor) desired to evade the law, as it is called, is immaterial, because the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it."

Both of these quotations were cited with approval by the Superior Court of Pennsylvania in Wyndmoor Building and Loan Association v. Power Building and Loan Association, 121 Pa. Superior Ct. 236, at page 240, and the same principle of law was applied by the Supreme Court of Pennsylvania in City Stores Company v. Philadelphia, 376 Pa. 482, at page 488, wherein the court said in relation to a tax matter where the transaction was deliberately moved from the City of Philadelphia to the County of Delaware in order to avoid the Philadelphia tax: "If a person is about to conduct a transaction which is taxable in one jurisdiction but not in another, there is no apparent reason why he should be barred from per-

forming it in the jurisdiction where it would be tax-free, and this is true even if the only reason for the choice was that of escaping the tax, since, if one has a legal right to do a particular thing, *the law will not inquire into his motive for doing it.*" (Italics supplied.) Citing numerous cases. Although this principle of law appears most frequently in tax cases, the principle is nonetheless universal. It would therefore follow that the motive of the land owner in amending its application for zoning change is not the subject of judicial inquiry.

A somewhat similar situation arose in Philadelphia County in the case of Kelly et al. v. Philadelphia et al., 86 D. & C. 408. There the City of Philadelphia changed the classification of an area from "B" and "C" residential to "least restricted" so that the city might construct an incinerator on the site. The protestants alleged that they filed protests to the amending ordinance signed by more than 20 percent of the owners of the area immediately adjacent to the site, thereby making it necessary that the ordinance to change the classifications be approved by a vote of three-fourths of the members of council, and thereafter council amended the ordinance by subdividing the lot and so rezoning it that two 100-feet wide strips of land immediately adjacent to the land owned by the protestants would be eliminated from the area contemplated for use as an incinerator site and protestants further contended that by so doing, council circumvented the provisions of the act which requires three fourths of the members of council to approve the change when 20 percent of the owners of the immediately adjacent land protests. The amending ordinance was passed by a simple majority and not by three fourths of the members of council. The arguments made by the protestants in that case are substantially the same as those made by the appellants here such as that no real subdivision was achieved,

that the small strips are still portions of the lot and that the protestants remain, in spite of the change, owners of more than 20 percent of the area immediately adjacent to the site. The protestants in the Kelly case made other challenges not here pertinent. Unfortunately the case is of little help here because the question of law was not reached but the decision turned on the disposition of procedural questions.

There is, however, a substantial analogy to the present question in Montgomery County in the case of Putney v. Abington Township, 176 Pa. Superior Ct. 463, reported in 70 Montg. 102, which also involves a zoning change to permit a shopping center in close proximity to a residential area. In that case the facts disclose that the property owners who protested against the adoption of the ordinance and living in proximity to the ground in question were the owners of ground situate on the south side of a railroad, the ground in question being on the north side of the same railroad. It was undisputed that the owners were separated from the tract by the right of way of the Reading Railroad and that the right of way was 100 feet wide. In that case, as in the present case, the statute prescribed the standard for measuring the percentage of protests against a zoning change. The challenge in that case rested upon the contention that land such as that owned by the railroad did not provide the buffer strip intended by the ordinance. The court, however, held that under the legal principles involved, the arguments advanced in support of the challenge were not persuasive because in order to require a favorable vote of three fourths of all members of the board of township commissioners, protestants must be the owners of at least 20 percent of the area immediately adjacent extending 100 feet therefrom and that the right of way of the railroad consumed that area.

Appellants in the present case contend that the present case is distinguishable from the Montgomery County case because in Montgomery County the intervening strip was owned by a stranger to the owners of the rezoned tract while in the present case, the intervening strip is an integral part of the entire tract owned by the intervening respondents. We do not think that the question of ownership of the intervening tract has any bearing. We think the controlling question is whether or not there is an intervening buffer strip in existence and particularly so since the theory of all zoning is based upon light, air, health, safety and public welfare, which will remain regardless of ownership.

A similar question as here arose in Maryland in the case of Montebello Land Company v. Frank Novak Realty Company et al., 167 Md. 185, 172 Atl. 911, in which the validity of an ordinance reclassifying a certain area was challenged. Before the reclassification was made, the land company involved in applying for the reclassification left undisturbed so far as zoning was concerned 150 feet of its land. The reclassification was challenged on the ground that more than a majority vote was necessary to effect the change because of a statute similar to that here involved. The court upheld the validity of the ordinance on the ground that the conditions requiring the ordinance to be passed by a favorite vote of three fourths of all the members of the legislative body of the municipality were not fulfilled.

The one remaining point to be determined is the contention of the appellants that because of section 203 of Radnor Township Zoning Ordinance of 1928 as follows: "BOUNDARY TOLERANCES. Where a district boundary line divides a lot held in single and separate ownership at the effective date of this Ordinance, the use regulations applicable to the less restricted dis-

trict shall extend over the portion of the lot in the more restricted district a distance of not more than fifty (50) feet beyond the district boundary line," the intervening respondents will be able to effectively reduce the buffer zone to 50 feet because of the permitted overlap. This may be true but it does not affect the question of law here presented. The same is true in every zoned boundary. Boundary tolerances are permitted by the zoning ordinance and are legally effective, and greater standards for the passage of this reclassification ordinance cannot be required simply because of the application of the boundary tolerances provision which may follow and particularly so because section 3105 of art. 31 of the First Class Township Code, 1949, P. L. 1955, requires the protestants in order to require a three-fourths vote to be owners of land within 100 feet regardless of boundary tolerances.

It follows that the ordinance must be upheld and the appeal dismissed and we therefore make the following

### Decree Nisi

And now, to wit, August 3, 1954, it is ordered, adjudged and decreed that the appeal of the Radnor, Ithan and St. Davids Civic Association of Delaware County, the Aldwyn Civic Association, the North Wayne Protective Association, the Wayne Business Association, Robert L. Emlen and Cora P. Emlen, Henry D. Booth, Jr. and Leanora D. Booth, Margaret V. Doyle, Robert A. Walker and Elizabeth Walker and Edward C. McLaughlin and Julia A. McLaughlin be and the same is hereby dismissed.

### Order

The clerk of courts is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi and, if no exceptions be filed thereto within 20 days after the service of such notice, to enter the said decree nisi as a final decree.